UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

UNITED STATES OF AMERICA                      CASE NO. 3:19-CR-00398-01

VERSUS                                        JUDGE TERRY A. DOUGHTY

EUGENE THURMAN                                MAG. JUDGE KAREN L. HAYES


MEMORANDUM RULING

Pending before the Court is a Motion to Suppress [Doc. No. 25] filed by Defendant Eugene Thurman ("Thurman").  Thurman and the United States of America ("the Government") filed objections to a Report and Recommendation [Doc. No. 68] issued by the Magistrate Judge.  In the Report and Recommendation at issue, the Magistrate Judge found (1)  Thurman had standing to raise the constitutionality of a "protective sweep" of the apartment where he was located;  (2)  that the "knock and talk" used by the police officers was reasonable and permissible;   (3)  that the protective sweep of the apartment was not justified and, therefore, unreasonable;  and (4) that the evidence sought to be suppressed would have been discovered pursuant to an independent source, despite the invalid protective sweep.  Therefore, it was recommended that Thurman's Motion to Suppress be denied.

On November 6, 2020, an Objection to the Report and Recommendation [Doc. No. 69] was filed by Thurman.  On November 23, 2020, an Objection to the Report and Recommendation [Doc. No. 74] was filed by the Government as to the portion of the Report and Recommendation that found the protective sweep to be invalid.  On December 7, 2020, a Response to the Objection to the Report and Recommendation [Doc. No. 75] was filed by Thurman.

After a *de novo* review of the record in this proceeding, and for the reasons set forth herein, this Court ADOPTS the portion of the Report and Recommendation dealing with standing, knock and talk, and independent source.

However, this Court DECLINES to ADOPT the portion of the Report and Recommendation dealing with the protective sweep and finds the protective sweep by the officers was valid and constitutional.

Therefore, the Motion to Suppress [Doc. No. 25] filed by Thurman is DENIED.

## I.      FACTS

On the evening of May 10-11, 2019, the Monroe Police Department ("MPD") responded to a call of shots fired at the Parkview Apartments, which are a high-crime area.  MPD units responding to the call retrieved 17 rifle rounds at the scene and heard 15 more shots fired when they were there.

Crime Stoppers of North Delta received an anonymous call at 4:03 a.m. on May 13, 2019. The call stated that Thurman was a convicted felon in possession of an assault rifle who lived at Parkview Apartments, Unit No. 74, with his girlfriend and her two children.  Later that same day, MPD detectives Triche Passman, James Schmitz, Doug Lambert, and three other uniformed police officers went to Parkview Apartments, Unit No. 74, to conduct a "knock and talk" to follow up on the Crime Stoppers tip.

The detectives encountered Thurman at the front door of Unit No. 74.  A young woman and her child left the apartment.  Detective Schmitz identified himself to Thurman and told him the purpose of the visit.  Thurman stated that he "frequented" the apartment but did not live there. Thurman denied the detectives' request for permission to search the apartment without a warrant.

Between four and five minutes after the encounter began, the detectives decided to make a

2

"protective sweep" of the apartment.  Within 30 seconds, the detectives observed an AK-47 assault rifle propped up against a wall in the far corner of the back bedroom, a baggie of marijuana on the night table, and digital scales.  Detective Lambert then placed Thurman in handcuffs.

The detectives then applied for a search warrant, which they obtained before 1:30 p.m.  The subsequent search of the apartment resulted in the seizure of a sandwich bag containing suspected marijuana, a digital scale, Thurman's ID card, one 7.62 X 39 unspent round, an AK-47 Century International Model M70 AB2, an AK-47 magazine containing (11) 7.62 X 39 rounds, a Glock 40 magazine, and a large case containing several 30-06 rounds.

At the Motion to Suppress hearing held on August 11, 2020, Detectives Passman,  Schmitz, and  Lambert testified.  Body-camera videos were also played of the incident.  Testimony showed that Parkview Apartments are in a very high crime area known for murders, attempted murders, armed robberies, gun trafficking, drug trafficking and rapes.  Detective Passman further testified that this year, as of August 11, 2020, the MPD has investigated 7 murders at Parkview Apartments.

The MPD detectives went to Thurman's apartment to conduct a "knock and talk," which involves going to a house or apartment and trying to make contact with the person in question to talk with him about the information they had received.

Detective Schmitz made contact with Thurman at the door of the apartment and confirmed that he was Eugene Thurman.  A woman then left the apartment.  Thurman denied anyone else was present.  He denied he had a weapon in the apartment and refused to allow the detectives to search the apartment unless they had a warrant.  Thurman said he frequented the apartment but denied living there.

Thurman told the detectives that the lessee of the apartment was Karlefa Jones ("Jones"), that he did not have her phone number, and that she worked at Motel 6.  The detectives were unable

to reach Jones. The detectives further questioned Thurman as to whether there was anyone else in the apartment. Thurman denied it, and, according to Detective Passman, the officers then did a "protective sweep" of the apartment to "make sure there was nobody else in there." As the protective sweep was conducted, Detective Passman then drew his weapon and proceeding inside, calling in a loud voice: "Monroe Police, anyone else in here?".

While performing the "protective sweep," Detective Passman found an AK-47 propped against the wall in the corner of the room. The detectives then proceeded to get a search warrant, where other contraband was found.

Detective Passman testified that the protective sweep was for officer safety and was to look for persons only. Some of the factors that went into this decision were Thurman's nervousness, his inconsistent answers, the inability to get in touch with the lessee of the apartment, and Thurman's overall evasiveness. Passman testified he was concerned about armed people and that there were concerns for officer safety since there had been two recent shootings with a rifle at Parkview Apartments, and MPD had received a tip that Thurman had a rifle in this apartment.

## II.   LEGAL ANALYSIS

In the Report and Recommendation, the Magistrate Judge found (1) Thurman had standing to raise the constitutionality of the protective sweep despite it not being his apartment; (2) that the "knock and talk" was reasonable and permissible' (3) that the protective sweep of the apartment was not justified and therefore unreasonable; and, (4) that all of the evidence sought to be suppressed would have been discovered pursuant to an independent source, despite the invalid protective sweep.

### A. Standing

This Court ADOPTS the portion of the Report and Recommendation determining Thurman

had standing to contest the protective sweep.  Although Thurman did not live there, he frequented

the apartment and had a legitimate expectation of privacy as a house guest. *Minnesota v. Olson*,

495 U.S. 91 (1990).

### B.  Knock and Talk

Likewise, this Court ADOPTS the portion of the Report and Recommendation that finds

the "knock and talk" was permissible.  A "knock and talk" is a reasonable police tactic to identify

a home's occupants and to further investigate complaints of illegal activity.  *United States v. Jones*,

239 F.3d 716 (5th Cir. 2001).  Certainly, the MPD detectives were justified in using the knock and

talk tactic under the facts of this case.

### C.  Independent Source

This Court also ADOPTS the Report and Recommendation with regard to the finding that

all of the evidence sought to be suppressed would have been discovered pursuant to an independent

source, even if it had not been found during the protective sweep based upon the officers detecting

the odor of marijuana coming from the apartment.

### D.  Protective Sweep

This Court DECLINES to ADOPT the portion of the Report and Recommendation which

found the protective sweep of the apartment was invalid.

A protective sweep of a home is justified when exigent circumstances exist.  A non-

executive list of factors that may be considered in determining whether exigent circumstances exist

include (1)  the degree of urgency involved and the amount of time necessary to obtain a warrant;

(2)  the reasonable belief contraband is about to be removed;  (3)  the possibility of danger to the

police officer guarding the site of the contraband while a search warrant is sought;  (4) information

identifying that the possessors of the contraband are aware that the police are on their trail;  and

(5)   the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. *United States v. Blount*, 123 F.3d 831 (5ᵗʰ Cir. 1997).

A few days before, MPD units had responded to a shooting at Parkview Apartments.  The officers reported recovering 17 rifle rounds at the scene and, while at the scene, heard 15 more shots fired.  Parkview Apartments is indisputably a high crime area.  As of the date of the suppression hearing on August 11, 2020, MPD had investigated seven murders in 2020 at Parkview Apartments.  Parkview Apartments is known for murders, attempted murders, armed robberies, assaults, gun trafficking, drug trafficking and rapes.

On May 13, 2019, at 4:03 a.m. Crime Stoppers of North Delta received an anonymous call that Thurman was a convicted felon in possession of an assault rifle who lived at Parkview Apartments in Unit No. 74.  Knowing all these facts, the MPD detectives drove into this high-crime area, putting their lives at risk.  Corroborating the anonymous tip, Thurman appeared at the door of Unit No. 74.   Thurman would not allow the detectives to search the residence without a warrant.

Certainly, there was a possibility of danger to the officers guarding the door had the others left to go get a warrant.  The person making the anonymous tip was right that Thurman lived in Unit No.74.  Was the anonymous caller also right that Thurman was in possession of an assault rifle in that apartment?  The MPD officers did not know whether someone else was in that apartment or not, but they needed to make sure.  They did.  It was the reasonable, safe thing to do.

Detective Passman gave the "articulable reason" for the protective sweep – to make sure no one else was in an apartment where an assault rifle was contained.  Passman was concerned about officer safety.

6

If reasonable minds could differ, courts will "not second-guess the judgment of experienced law enforcement officers concurring the risks of a particular situation." *United States v. Hearn*, 563 F.3d 95 (5th Cir. 2009).  This Court will not second-guess the MPD detectives in this case.  The protective sweep conducted in Parkview Apartment No. 74 is constitutionally valid.

**III.    CONCLUSION**

For the reasons set forth herein, the Motion to Suppress [Doc. No. 25] filed by Thurman is DENIED.

MONROE, LOUISIANA this 11th day of December 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE